IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FISH CONSTRUCTION, INC., | § § | |
| *Plaintiff,* | § § | |
| VS. | § § | Civil Action No. 4:19-CV-02079 |
| PENNSYLVANIA LUMBERMENS MUTUAL INSURANCE COMPANY, | § § § § | |
| *Defendant.* | § | |

## PLAINTIFF FISH CONSTRUCTION, INC.'S FIRST AMENDED COMPLAINT

Plaintiff Fish Construction, Inc. ("Plaintiff") hereby files this First Amended Complaint against Defendant Pennsylvania Lumbermens Mutual Insurance Company ("Defendant") for declaratory judgment, breach of contract, and violations of the Texas Insurance Code. Plaintiff respectfully would show this Court the following:

### PARTIES

1. Plaintiff Fish Construction, Inc. is a Texas corporation with its principal place of business in Stafford, Texas.

2. On information and belief, Defendant Pennsylvania Lumbermens Mutual Insurance Company is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. On information and belief, Defendant is an insurance company duly authorized to and conducing insurance business in the state of Texas. Defendant has appeared in this matter and may be served through its counsel of record.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

4. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because the property that is the subject of the insurance policy in dispute is situated in this judicial district and division.

## FACTUAL BACKGROUND

### I. The Facility and the Incident.

5. Plaintiff owns a manufacturing facility located at 9820 Cash Road in Stafford, Texas. The facility consists of approximately 24,000 square feet of shop area and 4,000 square feet of office area. The building was originally built in 1983 and was purchased by Scott A. Fish in 1991. Prior to occupying the facility, Plaintiff upgraded the lighting, electrical, dust collection and air systems to comply with local building codes and provide efficient service to its operations. Plaintiff has continued to reconfigure and update its systems to accommodate new equipment and growing demands.

6. Electrical service to the building is provided by CenterPoint Energy, which supplies 3-phase, 480-volt, 400-ampere service. The power pole providing service resides on the premises and power is fed to the building via underground conduit. The primary electrical protection for the equipment contained therein is a phase-failure relay designed to monitor incoming power supply and drop the supply when a leg is lost.

7. At approximately noon on January 8, 2018, CenterPoint Energy suffered the loss of the A-phase fuse on the pole-mounted transformer residing on the premises, resulting in a power

surge and single-phasing (voltage imbalance) condition (the "Incident"). As a result of the Incident, abnormal current caused by the voltage imbalance ("power surge") was estimated to be as high as **250% of the normal load**. The entire electrical distribution system of the building and every machine that was attached to the power supply were immediately adversely affected by the power surge.

8. In an instant, all the following items either were destroyed outright or suffered some degree of immediate and/or obvious damage because of the Incident:

    a. Underground Service Lateral;

    b. Phase Failure Relay System;

    c. Electric Forklift Battery Charger;

    d. 2 Kaeser Air Compressors;

    e. Compressor Synchronizing Switch;

    f. Vacuum Pump;

    g. Refrigerated Filter-Dryer for CDA;

    h. Uninterruptable Power Supply;

    i. Computers;

    j. Shoda CNC Router;

    k. Homag Router (BOF);

    l. Holzma Panel Saw;

    m. Weeke Machining Center; and

    n. Homag Edge Bander.

9. The extent of the damage was not wholly known at the time because some of the equipment was hidden from view and/or could not be assessed until power was properly restored

to the system. Additionally, as time passed and "break fixes" were attempted, the machines were continuously exposed to the prolonged effects of the single-phasing condition caused by the surge that resulted in additional electrical and mechanical damage.

10. As a result of the damage, Fish Construction incurred costs to repair and / or replace the damaged equipment, suffered downtime resulting in the loss of business income that otherwise would have been earned and expended extra costs in an effort to minimize the interruption at the facility and return operations to normal.

## II. The Insurance Policy.

11. Defendant issued Plaintiff a package commercial insurance policy, including commercial property coverage and commercial inland marine coverage, bearing policy number 42-F010-03-17 and effective from November 27, 2017 to November 27, 2018 (the "Policy"). As part of the commercial property coverage, the Policy includes Equipment Breakdown Protection Coverage by endorsement.

12. The endorsement provides coverage for direct damage to "Covered Property" located at the facility, resulting from a "Breakdown" to "Covered Equipment." "Breakdown" is defined in, pertinent part, as "the following direct physical loss that causes damage to 'Covered Equipment' and necessitates its repair or replacement: . . . (3) Electrical failure including arcing; unless such loss or damage is otherwise excluded within this Coverage Form."

13. The endorsement also defines the term "One Breakdown" as follows: "if an initial 'Breakdown' causes other 'Breakdowns', all will be considered 'One Breakdown'. All 'Breakdowns' at any one premises that manifest themselves at the same time and are the direct result of the same cause will be considered 'One Breakdown'."

14. The Policy endorsement includes a "direct damages" deductible of $2,500 and the endorsement further provides that, "[d]eductibles apply separately for each applicable coverage except if: . . . [m]ore than one 'Covered Equipment' is involved in 'One Breakdown', then only one deductible, the highest, shall apply for each of the applicable coverages."

15. Additionally, the Policy endorsement provides coverage to the insured for "Your [i.e., Fish's] actual loss of 'Business Income' during the 'Period of Restoration.'"

16. Finally, coverage also exists under the Policy endorsement for "[t]he 'Extra Expense' you [i.e., Fish] necessarily incur to operate your business during the 'Period of Restoration'."

### III. Coverage for the Incident.

17. The aforementioned property was damaged as a result of the Incident. Moreover, it caused Fish to suffer an interruption in its business and caused it to incur costs, which it would not have incurred if there had been no damage to its equipment, in an effort to minimize its loss of business income.

18. Within days of the Incident, Plaintiff notified Defendant of the electrical surge and the then-known damages. Despite such notice, Defendant did not send anyone to inspect the damage at the facility until August 2018—approximately seven (7) months after the Incident occurred.

19. The Incident, which caused damage to multiple pieces of "Covered Equipment," constitutes "One Breakdown," as all the damage was the result of a single electrical failure.

20. The only applicable coverage for the physical damage to the equipment under the Policy is the Equipment Breakdown Coverage, so only a single deductible applies.

21.    Notwithstanding the foregoing, Defendant responded to Plaintiff's claim for coverage by separating the claim into multiple claims—one for each individual piece of "Covered Equipment"—and charged Plaintiff a $2,500 deductible with respect to each individual piece of "Covered Equipment."

22.    On March 21, 2019, Plaintiff's counsel sent a letter to Defendant challenging Defendant's treatment of the "Claim" and requesting reconsideration of its position. No response was received.

23.    On May 6, 2019, Plaintiff's counsel sent a follow-up letter to Defendant notifying Defendant that its failure to send a timely response was in violation of its obligations under the Texas Insurance Code. Defendant's only response was an email to say that Defendant's Senior Claims Examiner, Ray Rogers, "sent a quick email to Travelers and we will speak and get a written response out soon." On information and belief, Travelers has a reinsurance agreement with Defendant in regard to the Policy, but Plaintiff's claim is with Defendant, not Travelers. Regardless, Defendant still has not responded to Plaintiff's request for reconsideration.

## CAUSES OF ACTION

24.    Each of the foregoing paragraphs is incorporated by reference in the following causes of action:

### A.    Declaratory Relief

25.    An actual controversy exists between Plaintiff and Defendant with respect to their rights and obligations under the Policy. In particular, a dispute exists as to the interpretation of the Equipment Breakdown Coverage Protection endorsement and the application of deductibles. In turn, a dispute exists as to the amount of damages owed by Defendant to Plaintiff under the Policy for the damage to its "Covered Equipment" as a result of the Incident, as well as any actual loss of

"Business Income" and "Extra Expenses" necessarily incurred during the "Period of Restoration" as a result of the equipment breakdown.

26. Plaintiff seeks a declaration that all the damage to the Covered Equipment is the result of a single "Breakdown"—*i.e.*, the electrical failure on the property, which was the cause of loss that resulted in damage to the "Covered Equipment"—to which only a single deductible applies. Plaintiff also seeks a declaration that Defendant failed to pay the appropriate amount of damages under the Policy. Further, Plaintiff seeks a declaration that it is entitled to recovery of its actual loss of "Business Income" and any "Extra Expenses" necessarily incurred to operate Plaintiff's business during the "Period of Restoration."

B. **Breach of Contract**

27. The Policy sets forth contractual obligations on the part of Defendant to pay the costs to repair or replace "Covered Equipment" damaged as a result of a "Breakdown."

28. Plaintiff has performed its obligations under the Policy by paying its premium and timely notifying Defendant of the claim.

29. Defendant has breached the Policy by not paying the amount owed under the Policy for the damaged equipment.

30. As a result of Defendant's breach, Plaintiff sustained damages in that it paid for repair and replacement of the damaged equipment as necessary to keep its business as operational as possible and has not been properly reimbursed by Defendant for those expenditures.

C. **Prompt Payment of Claims Act**

31. Defendant's failure to pay Plaintiff the amount owed under the Policy for the damaged equipment constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code (the "Texas Prompt Payment of Claims Act").

32. Accordingly, Plaintiff, in addition to its claim for damages in connection with Defendant's failure to pay the amount owed under the Policy for the damaged equipment, is entitled to an award of penalty interest at the rate of 18% per annum and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

### D. Attorneys' Fees

33. Plaintiff engaged the undersigned counsel to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

34. Plaintiff prays that it be awarded all reasonable attorneys' fees incurred in prosecuting its causes of action through trial and any appeal under Section 38.001(8) of the Texas Civil Practice and Remedies Code. In addition, and/or in the alternative, Plaintiff requests an award of attorneys' fees as permitted under the Prompt Payment of Claims Act.

### CONDITIONS PRECEDENT

35. All conditions precedent to Plaintiff's right to recover under the Policy have occurred, have been fully performed, or have been waived by Defendant.

### PRAYER

Plaintiff Fish Construction, Inc. prays that, upon final hearing of the case, this Court adjudge the contractual obligations of Defendant Pennsylvania Lumbermens Mutual Insurance Company, that this Court declare and adjudge that Plaintiff recover all damages from and against Defendant that it may reasonably establish by a preponderance of the evidence, and that this Court award attorneys' fees through trial and any appeal, costs of court, pre- and post-judgment interest, and such other and further relief, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

SHIDLOFSKY LAW FIRM PLLC

By: */s/ Douglas P. Skelley*
    Douglas P. Skelley
    *Lead Attorney to be Noticed*
    State Bar No. 24056335
    Federal Bar No. 903934
    doug@shidlofskylaw.com
    Rebecca DiMasi
    State Bar No. 24007115
    Federal Bar No. 29641
    rebecca@shidlofskylaw.com
    7200 N. Mopac Expressway, Suite 430
    Austin, Texas 78731
    512-685-1400
    866-232-8710 (Fax)

**ATTORNEYS FOR PLAINTIFF**
**FISH CONSTRUCTION, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that, on October ___, 2019, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of Texas, Houston Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to attorneys of record for all parties who have consented in writing to accept service by electronic means.

    */s/ Douglas P. Skelley*
    Douglas P. Skelley